## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Honora Tremaine Patterson, | Case No. 18-cv-2081 (NEB/SER) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Dominic Casalenda, Michael Costello, Michael Zacharias, *in their individual capacity*, | |
| Defendants. | |

The above-captioned case comes before the undersigned on Plaintiff's Motion for Order for Protection [and] Order to Show Cause for Protection, (ECF No. 30), Defendants Casalenda, Costello, and Zacharias' Motion for Summary Judgment, (ECF No. 42), and Defendants Casalenda, Costello, and Zacharias' Motion to Strike Plaintiff's Amended Complaint, (ECF No. 48).[1] This matter was referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. (ECF No. 20). For the reasons stated below, the Court recommends that Defendants' Motion for Summary

---

[1] Plaintiff originally sued Defendants Jason Hills and David Reishus, who filed a motion to dismiss. (ECF No. 13). The Court has dismissed all claims against Defendants Jason Hills and David Reishus pursuant to the parties' Joint Stipulation for Dismissal filed on December 26, 2018. (*See* ECF Nos. 32, 37). The motion to dismiss is moot and, accordingly, this Court only addresses motions by Plaintiff and Defendants Casalenda, Costello, and Zacharias.

In his amended complaint, Plaintiff also sued Defendants Derek Magel, Irene Tuschner, John Ricci, and James Frick. (ECF No. 41). The Court dismisses Plaintiff's allegations against these new defendants in the same manner and for the same reasons the Court dismisses the allegations against named Defendants Casalenda, Costello, and Zacharias.

Judgment be granted, Defendants' Motion to Strike Plaintiff's Amended Complaint be denied, Plaintiff's motion be denied, and this matter be dismissed with prejudice.

## I.    BACKGROUND

Plaintiff initiated suit on July 20, 2018. (Compl., ECF No. 1). Plaintiff is committed to the Minnesota Correctional Facility at Oak Park Heights through the Minnesota Department of Corrections (DOC). (Compl., at 3–4). Plaintiff brings a § 1983 civil rights action, asserting violations of his Fourth, Eighth, and Fourteenth amendment rights. (Compl., at 2, 9).

Plaintiff's allegations all appear to stem from a "verbal altercation" on June 14, 2018. (Compl., at 5). Plaintiff claims Defendant Casalenda "wrote a false report" stating Plaintiff refused to pull his hands from the cuffing post and that Defendant Casalenda also tried to "kick or slam [Plaintiff's] cuffing post really hard." (Compl., at 5, 7). Plaintiff claims Defendant Zacharias said "let's slam his [Plaintiff's] hands" and bent Plaintiff's right hand "causing unnessry [sic] pain." (Compl., at 7). Plaintiff also claims Defendant Zacharias violated his rights "by placing his hand on my buttcheek, spreading my anus open when he and other officers already did a strip search when I arrived at intake." (ECF No. 1, at 8). Plaintiff claims Defendant Costello "didnt [sic] try to stop staff when they were slamming my hands in the cuffing post" despite being the supervisor at the time. (Compl., at 7). Plaintiff claims Defendant Costello's failure to intervene "cause[d] my hand to be swollen and bruise[d]." (ECF No. 1, at 7).

Plaintiff claims he is "not allow[ed] to grievance the matter but I did pleaded not guilty and appeal and explain my complaint and I inform the warden of this matter and the

captain review the incident." (Compl., at 3). Plaintiff attached to his complaint his communication with Captain Matthews on the incident and a notice of appeal of a disciplinary hearing on June 21, 2018. (ECF No. 1, Ex. 2). There is nothing in the record on any other administrative remedies Plaintiff pursued.

Plaintiff also submitted an amended complaint adding defendants and allegations. (Amend. Compl., ECF No. 40). Defendants moved to strike Plaintiff's amended complaint for failure to comply with the Federal Rules of Civil Procedure and the Court's scheduling order. (ECF No. 48). This Court addresses the amended complaint alongside Plaintiff's initial complaint.[2]

In his amended complaint, Plaintiff adds Defendants Derek Magel, Irene Tuschner, John Ricci, and James Frick.[3] Plaintiff claims Defendant Magle "kick[ed] the cuff post in ACU cell 129 to . . . hurt my hand." (Amend. Compl., at 4). Plaintiff claims Defendant Costello was the supervising officer and allowed this to happen. (Amend. Compl., at 4). Plaintiff claims Defendant Ricci "slam[med] my hand in the cuffing" which caused Plaintiff's hand to hurt and swell up. (Amend. Compl., at 4). Plaintiff also claims Defendant Frick told Defendant Magle to slam Plaintiff's hands and that Defendant Frick performed

---

[2] The Court's Scheduling Order required all motions seeking to amend or supplement the pleadings to be served and filed by February 1, 2019. (ECF No. 29). There is no evidence Plaintiff served the amended complaint and Plaintiff did not comply with the other requirements in the Scheduling Order, such as redlining his amended complaint. While Plaintiff did not seek leave to amend, the Court nonetheless addresses his amended complaint because it was submitted before the amended pleadings deadline, it does not alter this Court's underlying analysis of the pending motions, and Plaintiff is pro se. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (explaining that allegations by a pro se complaint are held " to less stringent standards than formal pleadings drafted by lawyers . . . .). Thus, the Court denies the motion to strike.

[3] Plaintiff asserts Irene Tuschner is a DOC nurse and Derek Magel, John Ricci, and James Frick are DOC correctional officers. (ECF No. 41, at 7).

an unclothed body search on Plaintiff. (Amend. Compl., at 5). Plaintiff alleges Defendant

Tuscher "refuse[d] to treat my hand [and] she stated its [sic] not that bad and walk [it] off."

(Amend. Compl., at 4). It appears these allegations arose from the initial verbal altercation

described in Plaintiff's initial complaint.

In both his initial complaint and amended complaint, Plaintiff requests relief of

$30,000 and criminal charges for the officers who slammed his hands in the cuffing post.

(*See* Compl., at 10; Amend. Compl., at 6). In Plaintiff's initial complaint, he also requested

a "change [in] the policies to allow offender's [sic] to have fair hearing and holding officers

accountable for their actions it is [sic] unprofessional." (Compl., at 10).

## II.    MOTION FOR SUMMARY JUDGMENT

### A.    Legal Standard

Summary judgment is appropriate where no genuine issue of material fact exists and

the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The

movant has the burden of demonstrating that no genuine issue of material fact remains to

be decided. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When a motion for

summary judgment has been made and supported by the pleadings and affidavits, the

burden shifts to the party opposing the motion to demonstrate that a disputed issue of

material fact remains. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586–87 (1986).

When deciding a motion for summary judgment, courts liberally construe pro se

pleadings and hold them to a less stringent standard than those drafted by attorneys. *Haines

v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, a pro se plaintiff's claims cannot

survive a motion for summary judgment unless the plaintiff sets forth specific facts demonstrating that there is a genuine issue for trial. *Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522 (8th Cir. 1987). Mere allegations and conclusory statements are insufficient to withstand a motion for summary judgment. *Dunavant v. Moore*, 907 F.2d 77, 80 (8th Cir. 1990).

### B.    Analysis

Under the Prison Litigation Reform Act (PLRA), an inmate must exhaust all administrative remedies available within the prison grievance system before bringing a federal action related to prison conditions. *See* 42 U .S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). An inmate must "properly exhaust" available administrative remedies by completing the prison grievance process in accordance with all applicable procedural rules, including deadlines. *Jones v. Bock*, 549 U.S. 199, 217–18 (2007).

The PLRA's exhaustion requirement is satisfied "when an inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits." *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014) (quoting *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012)). An inmate must properly exhaust administrative procedures even if

the relief sought is not available through those procedures and even if he "subjectively believed that there was no point to his pursuing administrative remedies." *Lyon v. Vande Krol*, 305 F.3d 806, 808–09 (8th Cir. 2002) (en banc). Nonexhaustion is an affirmative defense, such that defendants have the burden of raising and proving the absence of exhaustion. *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015).

The Minnesota Department of Corrections ("MDOC") has an established three-step grievance procedure for resolving prisoner complaints. At step one, an inmate must attempt to informally resolve any issues by sending kites (intra-prison written communications) to persons involved in the relevant issue. (Wheeler Aff. ¶ 3). If the attempts to resolve the issue informally are unsuccessful, the prisoner may move to step two and file a formal grievance form with the correctional facility's grievance coordinator. (Wheeler Aff. ¶ 3). The grievance must be filed within thirty calendar days of the occurrence of the issue being grieved. (Wheeler Aff. ¶ 3). If the offender is dissatisfied with the facility's decision, he may go onto step three and initiate a grievance appeal. (Wheeler Aff. ¶ 3). Once a grievance appeal is addressed by the Commissioner of Corrections, the Assistant Commissioner, or the Deputy Commissioner, no further appeals are permitted, and the formal grievance procedure is at an end. (Wheeler Aff. ¶ 3). MDOC also allows prisoners to bypass this process and file a grievance directly with MDOC's central office if the prisoner fears retaliation by the facility. (Wheeler Aff. ¶ 3).

Here, it is evident Plaintiff completed the first step of the prison grievance procedure by sending an informal kite and then proceeding up the chain of command to Captain Matthews. (ECF No. 1, Ex. B). There is no evidence, however, that Plaintiff completed the

available administrative process by filing a formal grievance and then appealing any adverse decision. Indeed, the evidence in the record indicates the opposite. In his initial complaint, Plaintiff acknowledged there is a prisoner grievance procedure in his institution and indicated he did not submit his claims to the prisoner grievance process. (Compl., at 3). MDOC also has no record of Plaintiff filing a grievance or grievance appeal on the allegations in the complaint. (Wheeler Aff. ¶ 6; Ebeling Aff. ¶ 6). It is thus undisputed that Plaintiff did not pursue MDOC's grievance process to finality as the PLRA requires.

Plaintiff argues he was unable to use the grievance process for his allegations on excessive force, failure to intervene, and unclothed body searches. (Compl., at 4–5). That assertion is not only unsupported by any evidence in the record but is affirmatively contradicted by the existing evidence. (*See* Wheeler Aff. ¶¶ 3–4 (outlining MDOC's grievance procedure and asserting that Plaintiff "may file grievances related to DOC staff conduct, including staff's use of force, failure to intervene, and use of unclothed body searches")). Plaintiff's mistaken belief that there were no formal grievance procedures for him to pursue does not excuse his failure to exhaust the available administrative remedies. *See Lyon*, 305 F.3d at 808–09.

Plaintiff also submitted an appeal form of his disciplinary hearing in June 2018, but this does not satisfy MDOC's grievance procedure. MDOC's disciplinary appeal process is separate from its grievance process. (Wheeler Aff. ¶ 5). MDOC's disciplinary appeal process provides "procedures, responsibilities, prohibitions, and sanctions that govern *offender* conduct." (Wheeler Aff. ¶ 5) (emphasis added). An offender, such as Plaintiff, cannot use the disciplinary appeal process to raise issues about *staff* conduct. (Wheeler Aff.

¶ 3) (emphasis added). As discussed above, under the PLRA, Plaintiff was required to go through MDOC's grievance procedure and file a formal grievance form—and not a disciplinary appeal.

Based on the unrebutted evidence in the record, the Court finds Plaintiff has failed to satisfy the PLRA's exhaustion requirement to pursue the established MDOC grievance process to its final stage and receive an adverse decision on the merits of his claims on excessive force, failure to intervene, and unreasonable searches.[4] The Court therefore recommends that Defendants' motion for summary judgment be granted and that this action be dismissed for failure to exhaust administrative remedies. *See Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) ("If exhaustion was not completed at the time of filing, dismissal is mandatory."); *Barbee v. Corr. Med. Servs.*, 394 F. App'x 337 (8th Cir. 2010) (holding that "the district court should not have reached the merits of [the prisoner's] claims" where the defendants raised a nonexhaustion defense and the record supported that defense).

The Court also recommends this action be dismissed with prejudice. While a failure to exhaust typically warrants only dismissal without prejudice, the thirty-day deadline for Plaintiff to file a formal prison grievance on his claims has long since expired and thus any future attempts at exhaustion would almost certainly be futile. *See Allen v. Jussila*, No. 08–6366, 2010 WL 3521934, at *9 (D. Minn. Aug. 5, 2010) ("[B]ecause Allen can no longer

---

[4] The Court also finds this to be true of Plaintiff's allegations against Defendants Derek Magel, Irene Tuschner, John Ricci, and James Frick. Plaintiff's allegations against these defendants also arose from the incident on June 14, 2018. As explained, Plaintiff failed to file any grievance regarding the incident and thus failed to satisfy the PLRA's exhaustion requirement on his claims against these defendants as well. The Court therefore also recommends dismissing Plaintiff's claims against these defendants.

exhaust his claims [due to the expiration of the deadline for appealing his prison grievances], he has procedurally defaulted on them and his suit is precluded forever and must be dismissed with prejudice."), *aff'd* 430 F. App'x 555 (8th Cir. 2011); *see also Dupey v. Smith*, No. 12–1233, 2013 WL 4198732, at *4 (D. Minn. Aug. 15, 2013) (dismissing with prejudice where the deadline for filing a prison grievance had passed because "[a]ny attempts by Plaintiff to file grievances regarding the medical treatment of his thumb . . . in accordance with the DOC guidelines would be procedurally barred").

### III.    Plaintiff's Motion for Miscellaneous Relief

Plaintiff alleges he feels unsafe because MDOC staff have "slammed my hands in the food slot," threatened and harassed him because of pending litigation (ECF No. 31 at 1–2), and because Plaintiff's "kites to the proper chain of command [] was ignore[d]," and he allegedly discovered glass in his food. (ECF No. 30). On this basis, Plaintiff filed a one-page motion for "protection," to show cause, a preliminary injunction, as well as a temporary restraining order. (ECF No. 30).

The Court recommends denying Plaintiff's motion to the extent he asks for non-emergency relief that could be addressed through MDOC's grievance process. The requirements of the PLRA and MDOC's grievance procedure is discussed at length above. Plaintiff alleges he "wrote kites to the proper chain of command" and attached a letter he wrote to MDOC Commissioner Tom Roy alleging that MDOC staff harassed him. (ECF No. 30, at 1). But Plaintiff does not claim he filed a grievance as required by MDOC's procedures. (*See* ECF No. 41, at 3). MDOC also lacks records showing Plaintiff filed a grievance with either the correctional facility in which he is an inmate or at MDOC's

Central Office. (Wheeler Aff. ¶4, Ebeling Aff. ¶5). The Court finds it undisputed that Plaintiff did not pursue MDOC's grievance process to finality as required by the PLRA.

The Court also recommends denying Plaintiff's motion to the extent it requests intermediate relief because Plaintiff has not demonstrated he is entitled to it. The purpose of intermediate injunctive relief, whether in the form of a temporary restraining order or a preliminary injunction, is to preserve the status quo and protect the plaintiff from the harms alleged in his complaint until the court has an opportunity to rule on the merits of the plaintiff's claims. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994). A "preliminary injunction is . . . appropriate to grant intermediate relief of the same character as that which may be granted finally" and not for matters "lying wholly outside the issues in the suit." *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945). As such, a party moving for such relief "must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose*, 42 F.3d at 471. A plaintiff may not obtain a preliminary injunction "based on new assertions of mistreatment that are entirely different from the claim[s] raised and the relief requested" in his underlying complaint. *Id.*

Plaintiff has not established the necessary connection between the injuries claimed in his motion for injunctive relief and the conduct asserted in his complaint. As discussed, Plaintiff's underlying complaint involves allegations of excessive force, failure to intervene, and unlawful searches from a single incident on June 14, 2018. Plaintiff's motion for a temporary restraining order is based on new assertions of mistreatment involving Plaintiff allegedly finding glass in his food, his hand being slammed in the food slot,

MDOC staff harassing him, and staff ignoring his complaints. These allegations happened after the June 14, 2018 incident in his complaint. Because the injuries claimed and the relief requested in his motions for injunctive relief are unrelated to the conduct alleged in his complaint, these allegations cannot support a temporary restraining order or a preliminary injunction. *See Devose*, 42 F.3d at 471 (holding that "new assertions" of retaliation and mistreatment "cannot provide the basis for a preliminary injunction"); *Hale v. Wood*, 89 F.3d 840, 840 (8th Cir. 1996) ("We reject Hale's contention that defendants' allegedly threatening and retaliatory behavior mandate granting injunctive relief, because Hale failed to establish a connection between these injuries and the conduct he challenged in his complaint.")

Furthermore, Plaintiff is also not entitled to injunctive relief against defendants in their individual capacities. "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)); *Greenwalt v. Indiana Dept. of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005) ("[S]ection 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity."); *Wolfe v. Strankman*, 392 F.3d 358, 360 n.2 (9th Cir. 2004) (noting that injunctive and equitable relief are not available in § 1983 individual-capacity suits). Plaintiff only sues Defendants in their individual capacities only, making injunctive relief inappropriate.

## IV.    RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants Reishus and Hills' Motion to Dismiss, (ECF No. 13), be **DENIED AS MOOT**;

2. Plaintiff's Motion for Order for Protection [and] Order to Show Cause for Protection, (ECF No. 30) be **DENIED**;

3. Defendants Casalenda, Costello, and Zacharias' Motion for Summary Judgment, (ECF No. 42), be **GRANTED**;

4. Defendant Casalenda, Costello, and Zacharias's Motion to Strike Pleading Plaintiff's Amended Complaint, (ECF No. 48), be **DENIED**; and

5. This matter be **DISMISSED WITH PREJUDICE**.


Dated: April 23, 2019

*s/ Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

### NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgement of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).